College at all. I think we have both sides by Zoom here. Mr. Lino? Good morning, Your Honor. Can you hear us okay? I can hear you fine, thank you. All right. And Ms. Kobos? It's Kobos, Your Honor. Kobos. All right. You can hear us too? Yes, I can. Okay. All right. Mr. Lino, you can begin whenever you're ready. You have your one minute for rebuttal. Thank you, Your Honors. This case is a reversible case. There are two parts to the appeal. The findings of fact and then the sanctions. First on the findings of fact. Our first argument on why the case could be reversed has got to do with extrinsic evidence. Defendants cited the Anderson v. City of Bessemer case. And when a lower court, when the finder of fact decides to go with a quote unquote plausible theory such as defendant's theory of forgery, this court does not have to affirm if that theory is contradicted by extrinsic evidence. And in fact, there is extrinsic evidence which we would like to point out in particular. The main defense witness, Dr. Campo, admitted that the document had an ink signature. Secondly, Dr. Campo admitted that the signature on the document was his. Do you agree that the standard here is clear error? You have to show that the fact finder made clearly erroneous findings? I agree. That is the appellate court standard of review. When you look at the evidence, the documents clearly are, one is clearly a fabrication, one is a forgery. The testimony, the explanation of your client really doesn't make any sense. You have the doctor testifying. How do we find that the fact finder was clearly erroneous in concluding that these are forged and fabricated and altered documents? Because there is equivocal proof and not solid proof to support that. There are two plausible theories. But if there are two plausible theories, the law is that the person, the presider over the hearing who is hearing your client's testimony and the doctor's and the doctor's staff gets to assess their credibility and decide which of the two theories is believable. And that's exactly what happened here. It wasn't like there was no hearing. There was a hearing. Everybody testified. And the judge concluded that your client was lying and that it was forged. You yourself said there's two plausible things. And that's exactly what we have said. We will not second-guess if there's two plausible inferences and there's a hearing and there's a credibility determination. It's unreviewable. As I just said, though, I don't quite agree because if there's extrinsic evidence, this court does not have to affirm that under ante sub. And the thing is, what the judge learned… …was an appropriate one. What there is to be said about this sanction is against other possible sanctions. When the district judge made a sanction which is very different from previous ones. Thank you, Your Honor. Let me turn to that. First of all, this sanction of dismissal was not within the range of permissible. First, it violated Second Circuit law about being cautious and sparing of such a drastic, severe remedy. Secondly, it violated Second Circuit law about deciding a case on the merits. So it was clearly inappropriate, clearly excessive. Number two, defendants weren't prejudiced. You think it's excessive to dismiss a case as a sanction when the party submits fabricated and forged evidence? That's the finding. Well, the thing is this, Your Honor. This whole sanction motion went before a judge, Judge Spatt. He looked at the fact findings. He fashioned a sanction. There was a very appropriate remedy and sanction that was decided. And it favored, gave defendants a fair shot. Yes, but the later judge said as a practical matter, that sanction wouldn't do anything because your client couldn't pay you. And so decided that another sanction was correct. Now, you know, we're reluctant to dismiss cases as a sanction. And judges look a little bit, I think, at the degree of the merits that they are throwing out when they do that. Isn't this a case where all in all the judge was doing that and that's an appropriate thing? Not at all. Judge Spatt had a handle on the case, weighed it heavily, and came up with not just a fine to the clerk and to the opponent, but a preclusion of evidence and a jury charge, a negative inference charge. There was a lot that defendant got from their motion for sanctions. It was in place. Nobody had to really do anything with it. And what is especially bothersome is the fact that Judge Brown then goes on to say that he had some kind of a fuller record, which he didn't have. There was no new evidence. There was no change in the law. There were additional proceedings that he was aware of. But what is the standard for us to apply in reviewing Judge Brown's sanction? Is it abuse of discretion? Well, defendant argues that it's deferential and an abuse of discretion. The thing is this, as to being deferential, I do want to add there is a line of cases. Well, what I'm asking you is what is the standard in your view? If you don't think it's abuse of discretion, what do you think it is? I think the appellate court must scrutinize the lower court, the trial court, when it acts as an accuser, a fact finder, and sentencing judge, which is what happened here. And that, therefore, it's not just an abuse of discretion, but scrutiny. Put Judge Brown's conduct under the microscope. We had a good record, a good judge, and a sanction that was heavy-duty. Would you agree that if Judge Brown had the case all along and had come to this conclusion, would you say that that was incorrect? That he couldn't conclude that this was severe enough? In other words, is your problem the fact that Judge Spada had made a ruling, or do you just think this could not be an appropriate sanction for a forgery in a litigation? It still would be inappropriate. Wasn't this a central part of your client's case? Wasn't this doctor's note submitted to the EOC and was a cornerstone of why she said she should win? It wasn't some minor document. No, that's wrong, Your Honor. Look, this defendant accused my client of five frauds. They missed the market, missed proving four of those five. On the fifth and final one of these documents, they had about five documents they thought were fraud and forgery, and most of them were thrown out and were true and correct documents. Were Dr. Campos's notes submitted to the EOC, those doctor's notes that were found to be forged, were they submitted to the EOC or not? Those documents, it's my understanding they were submitted. But what I wanted to go on to say was the two altered documents were identical to a pre-altered other medical notes from Dr. Campos from 2004. And to answer your question, Your Honor, about the sanction, whether it was Judge Brown or Long, there are viable causes of action unrelated to these two. And furthermore, there are hundreds of pages of medical records from Dr. Campos and attributed to the patient. Counsel, I have a different factual question. Your client, after all of these things, did she continue to teach in the classroom that she said was inadequate and that she couldn't use for some years after? I know now she's not doing it, but after when she brought this question asking for adjustment, a different way of treating her, did she continue to teach in that place? It is my understanding she continued to teach on a limited basis the best she could without those accommodations. All right. Thank you, Mr. Lino. You have your one minute for rebuttal, and we'll now hear from Ms. Cobos. Good morning, Your Honors. May it please the Court, my name is Dana Cobos, representing defendants at Pelley's Suffolk County Community College, Nancy Jurley, Diane Bosco, and Jeffrey Tempera. With regard to the two questions on appeal, I think the first question, whether or not the district court was clearly erroneous in its determination regarding the two Dr. Campo notes, I think that's been discussed, and I'm not really going to get into that. I think it's been well established that there was no clear error in that decision. With regard to the second question as to whether or not Judge Brown abused his discretion in dismissing plaintiff's case as a sanction, I think that that argument is equally unavailing, and I do believe that the correct review by the court is abuse of discretion. Yes, but we have many cases which say the dismissal is really the last thing that we should do, and that if a case has any possible merits, we should examine any number of other types of sanctions. So why was it in this case that this extreme measure was the appropriate one? We're not saying that what the plaintiff did wasn't terribly wrong and shouldn't be seriously sanctioned, but why this one, which says you lose even if your case had merits, isn't too strong? So I think Judge Brown thoroughly addressed that in his decision, and he based that on the fact that this was such a prolonged scheme by the plaintiff. So this basically started in 2010 when she submitted documents to the… And why isn't the sanction of $80,000 plus a $5,000 fine a more appropriate sanction than say you lose a case which might have merits if it had merits? Well, one of the reasons is that the plaintiff opposed our attorney's fees motion and also sought to vacate the $5,000 sanction because of her inability to pay. So that would not be an appropriate sanction, as Judge Brown indicated, because that's due time. We're not saying that this sanction is appropriate because with respect to this particular party, the other forms of sanctions which might work, though they look dramatic, ain't there. That's what you're saying. Yes. That's one of the reasons. Plus, there's no telling what would happen if this person was allowed to get on the stand, as Judge Brown said. She has lied repeatedly, has never corrected her lie. She has come up with new stories and theories based on every form of testimony. I don't understand what you're saying. So she gets on the stand and what happens? She doesn't explode. She doesn't throw bombs at the judge. There's no indication of that. I mean, she may lie, but let's face it, the number of people in cases who get up there and lie are more frequent than we'd like, aren't they? Yes, but I think the way Judge Brown expressed it in his decision is that the instant case was plagued with the same concerns as those in the Lawrence case, where he was saying that the court has no confidence that the plaintiff will continue to engage in misconduct, cannot anticipate her testimony, and cannot anticipate the testimony that would be offered to a jury, and finds that her unrelenting, outrageous conduct thoroughly undermines her credibility, and that the only remedy that is appropriate in this case is therefore dismissal of the case. And that's really the only point I wanted to make, so I will rest on my brief unless there are any further questions. I don't think there are any other questions. Thank you. We know you have one minute. Thank you, Your Honor. First of all, this was not a pattern of wrongdoing. As Judge Spad said, it was an isolated incident. Number two, it was an evidentiary record as to documents and fraud or forgery of the documents, alteration. There's nowhere in the record where there was a conclusion that my client lied. So anything you've heard about Ms. Esposito lying isn't in the record. What about her testimony that the doctor's office or someone at the doctor's office altered the documents? Judge Brown thought that that was a lie? She thought it was an alteration of a document. But if my client said that happened, it did happen. But it's not a lie. Frankly, there are a lot of judges who would have referred your client for criminal prosecution. And in that sense, it's hard to conclude that this was an abuse of discretion. All's I can tell you, Your Honor, this case was in front of a senior judge with 40 years on the bench. He didn't refer it for criminal processing. You have someone who brazenly fabricates and forges documents, submits them to a government agency, then comes into court and makes up a story about how it happened. Really, it's hard to understand what we're doing here. Well, I think the thing is, you've got a client who's a patient who's got a disability. She goes to a medical office seeking a doctor's note. That happens a million times today, coast to coast. That's what she said on the record. And it doesn't happen a million times a day that a patient then alters the doctor's records. That's not in the record, Your Honor. Mr. Lino, I think we're... What sanction are you suggesting would have been appropriate that was a real sanction for what the district judges all found was seriously improper, potentially criminal action? What sanction are you suggesting when Judge Brown says the sanction that was imposed looks tough but actually doesn't operate because they can't pay? What sanction are you suggesting? Of the three main sanctions, I would agree with Judge Spat that the preclusion of evidence is effective and would disallow the wrongdoer of using that altered document in her presentation of evidence. That was good as a sanction. Number two, he also had the jury charge, a negative inference charge. I think that is effective and tells the jury of the plaintiff's tendency to do that, which then covers credibility. Both of those sanctions are good. On the third part of it, with the money and the fine, I think that is effective. Whether or not the person can pay it or not is a separate issue, but that stings. That hurts. Money is powerful. All right. Thank you, Mr. Lino. Thank you. Ms. Kovas will reserve the decision. Have a good day.